UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

TARRIFY PROPERTIES, LLC, *et al.*,          :
                                            :          Case No. 1:19-cv-2293
          Plaintiffs,                       :
                                            :
vs.                                         :          OPINION & ORDER
                                            :          [Resolving Docs. 50, 53, & 60]
CUYAHOGA COUNTY,                            :
                                            :
          Defendant.                        :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Tarrify Properties, LLC failed to pay $35,000 in Cuyahoga County property taxes on a southeast Cleveland commercial property.  For real estate tax purposes, Cuyahoga County had earlier valued Tarrify's property as worth significantly more than the $35,000 tax debt.

The County foreclosed Tarrify's property.  But instead of selling it, the County transferred the property to a county-run land bank.  Tarrify received no compensation for any property value exceeding its tax liability.  Tarrify brings this putative class action under 42 U.S.C. § 1983 on behalf of itself and other Cuyahoga County landowners in hopes of retrieving money damages for any surplus land value.

With this order, the Court considers Plaintiff Tarrify's class certification motion along with related Tarrify and Cuyahoga County limine motions.  For the reasons stated below, the Court **DENIES** Tarrify's class certification motion and limine motion and **GRANTS** Cuyahoga County's limine motion.

Case No. 1:19-cv-2293
Gwin, J.

## I.      BACKGROUND

Ohio, like most states, taxes private land holdings within its borders based on land value.  Each Ohio county auditor determines each property's value for tax purposes in six-year intervals.[1]  The county then imposes a fixed tax rate to each property's determined value.

When land becomes tax delinquent, under certain circumstances, Ohio law allows county auditors to deem the property abandoned.[2]  This enables the county to initiate foreclosure proceedings against the property under specialized sections of the Ohio Revised Code in the county board of revision.[3]  In this specialized foreclosure proceeding, the county treasurer must show the property's valid tax obligation. In showing that properties in this alternative program have valid tax obligations, the county mostly relies on the county auditor's most recent land valuation.[4]

Upon confirming the debt, Ohio law allows the county treasurer to transfer a delinquent property to various public entities, including a "municipal corporation, township, county, school district, community development corporation, or county land reutilization corporation."[5]   Under this provision, the land transfer is performed "without appraisal and without a sale" and in the transfer's aftermath "all impositions and any other liens on the property [are] deemed forever satisfied and discharged."[6]

---

[1] Ohio Rev. Code § 5713.03.
[2] Ohio Rev. Code § 323.67(A).
[3] Ohio Rev. Code §§ 323.65–323.79.
[4] Ohio Rev. Code § 323.71(B).
[5] Ohio Rev. Code § 323.78(B).
[6] *Id.*

Case No. 1:19-cv-2293
Gwin, J.

These abandoned land transfers can be performed "regardless of whether the value of taxes, assessments, penalties, interest, and other charges due on the parcel, and the costs of the [foreclosure] action exceed the fair market value of the property,"[7] meaning the county may take title to a property without paying the owner for any property value exceeding tax liability.

Plaintiff Tarrify claims this cancellation of equity without surplus compensation happened when the Cuyahoga County Treasurer filed August 23, 2018 foreclosure proceedings against its southeast Cleveland property.[8]  In 2018, the Cuyahoga County Auditor had valued Tarrify's property at $164,700.[9]  Relying on this valuation, the Cuyahoga County Treasurer persuaded the Cuyahoga County Board of Revision that the Tarrify property was subject to just over $35,000 in total taxes, fees, and assessments.[10]

On May 29, 2019, the Cuyahoga County Board of Revision foreclosed on the Tarrify property and ordered the Cuyahoga County Sheriff to transfer the property's title following expiration of a 28-day right of redemption period.[11]  Tarrify did not exercise its redemption right.[12]  On July 15, 2019, the Sheriff transferred the Tarrify property title to the Cuyahoga County Land Reutilization Corporation, a county-controlled land bank.[13]  Tarrify did not appeal the transfer.[14]

---

[7] *Id.*
[8] Doc. 20.
[9] Doc. 55-7 at 20.
[10] *Id.*; Doc. 13-7 at 2.
[11] Doc. 13-7 at 2–4; Doc. 13-9 at 2.
[12] Doc. 55-15 at 11.
[13] Doc. 55-6 at 1.
[14] Doc. 55-15 at 11.

Case No. 1:19-cv-2293
Gwin, J.

Repeating, Tarrify owed $35,000 in taxes on a property Cuyahoga County had valued at $164,700.  Cuyahoga County took the property and gave Tarrify no compensation for its surplus equity.

On October 1, 2019, Tarrify sued Cuyahoga County under 42 U.S.C. § 1983, claiming that the land transfer without surplus remuneration was a taking without just compensation prohibited by the United States Constitution's Fifth and Fourteenth Amendments.[15]  Tarrify also asserted claims under the Ohio Constitution's Eminent Domain provision.[16]

On December 18, 2019, Cuyahoga County moved to dismiss the amended complaint, arguing, among other things, that the Tax Injunction Act[17] deprived this Court of subject matter jurisdiction, that res judicata barred the action, that Tarrify otherwise failed to state a valid § 1983 claim, and that Tarrify's Ohio claim was not properly before the Court.[18] This Court partially agreed with the County and dismissed Tarrify's Ohio claim.  The Court, however, allowed Tarrify's § 1983 claim to proceed.[19]

Plaintiff Tarrify now moves under Federal Rule of Civil Procedure 23(b)(3) to certify a class of Cuyahoga County landowners who have suffered similar purported injuries.[20]  Tarrify defines the class as follows:

> All persons whose interest in real property located in Cuyahoga County, Ohio was directly transferred to another entity through the invocation and use of the procedures set forth in O.R.C. § 323.78, where the total value of that property

---

[15] Doc. 20.
[16] *Id.*; Ohio Const. Art. I, § 19.
[17] 28 U.S.C. § 1341.
[18] Doc. 29.
[19] Doc. 51.
[20] Doc. 50 at 24.

Case No. 1:19-cv-2293
Gwin, J.

exceeded the amount of the impositions on that property at the time the transfer occurred.[21]

Cuyahoga County opposes the class certification motion,[22] Tarrify replies,[23] and the County sur replies.[24]

## II.    LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[25]  To merit certification, a putative class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequate representation.[26]  A putative class must also fit within one of the three types of classes listed in Rule 23(b).[27]

Rule 23(b)(3) classes—the kind at issue here—must meet predominance and superiority requirements.[28]  That is, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" and class treatment must be "superior to other available methods."[29]

In addition, the Rule 23(b)(3) class members must be ascertainable, meaning that the party seeking certification must provide "a class description sufficiently definite so that it is

---

[21] *Id.* at 1.
[22] Doc. 52.
[23] Doc. 62.
[24] Doc. 73.
[25] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).
[26] *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).
[27] *Id.*
[28] *Id.*
[29] *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

Case No. 1:19-cv-2293
Gwin, J.

administratively feasible for the court to determine whether a particular individual is a member."[30]

As the party seeking class certification, Plaintiff Tarrify bears the burden of "affirmatively demonstrat[ing]" compliance with these requirements.[31]

### III.    DISCUSSION

The Fifth Amendment does not forbid takings.  Instead, it provides that "private property" shall not "be taken for public use without just compensation."[32]  Just compensation requires that the land-taking governmental entity compensate the landowner with the fair market value of the taken property, as determined at the time of the taking.[33]  Plaintiff Tarrify claims that Cuyahoga County's practice of seizing property with higher fair market value than delinquent taxes violates this constitutional protection.

In Tarrify's view, Cuyahoga County gave only the property tax liability cancellation as "compensation" for its land seizures.  When the discharged tax liability exceeds the land's fair market value, Tarrify acknowledges just compensation.

However, Tarrify argues that when the land's fair market value exceeds the discharged tax liability and no surplus payment is made to the landowner, the governmental compensation is inadequate under the Fifth Amendment.

Accordingly, whether an aggrieved landowner has a valid 42 U.S.C. § 1983 claim depends on two key numbers: the property's delinquent tax liability and the property's fair market value, both measured at the time of transfer.  The parties do not dispute that it is

---

[30] *Young v. Nationwide Mut Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012).
[31] *Wal-Mart*, 564 U.S. at 350.
[32] U.S. Const. amend. V.
[33] *United States v. Miller*, 317 U.S. 369, 374 (1943).

Case No. 1:19-cv-2293
Gwin, J.

"administratively feasible" for the Court to use Cuyahoga County's records to establish

delinquent tax liability.

The parties disagree, however, whether Cuyahoga County's property valuation can

be used to determine a given property's fair-market value at the time of transfer.

Plaintiff Tarrify argues that aggrieved landholders are entitled to use the Cuyahoga

County Auditor's 2018 tax valuations to establish the seized properties' fair market value.

And because the County relies on the auditor's valuations in foreclosure proceedings,[34]

Tarrify argues that the doctrines of collateral and judicial estoppel should bar Cuyahoga

County from arguing that seized properties have value lower than the tax valuations reflect.

Cuyahoga County disagrees, arguing that nationwide precedent holds that property

tax valuations cannot be used, and are inadmissible, to establish land value for non-tax

purposes.  Highlighting this conflict, the parties have also filed cross limine motions, each

advancing the same position they do in the class certification briefing.[35]

Cuyahoga County is right that most courts would not allow use of the auditor's tax

valuations to establish a property's fair market value in non-tax proceedings.[36]  Courts'

varying reasons for applying this principle all essentially reduce to the idea that tax valuations

are unreliable measures of sale value.[37]

---

[34] Ohio Rev. Code § 323.71(C).

[35] Doc. 53; Doc 60.

[36] *SunTrust Mortg. Inc. v. Busby*, 469 F. App'x 205, 207 (4th Cir. 2012); *United States v. 0.59 Acres*, 109 F.3d 1493, 1496 (9th Cir. 1997); *Ohio Cas. Ins. Co. v. D & J Distrib. & Mfg. Inc.*, No. L-08-1104, 2009 WL 2356849, at *4 (Ohio Ct. App. 6th Dist. July 31, 2009) (citing *Bana v. Pitt. Plate Glass Co.*, 76 N.E.2d 625, 628 (Ohio Ct. App. 9th Dist. 1947)).

[37] *Valuation for taxation purposes as admissible to show value for other purposes*, 39 A.L.R.2d 209 § 2 (surveying nationwide precedent on the question and describing the proposition that "assessed valuation is not admissible as evidence of valuation for purposes other than taxation" as "overwhelmingly established").

Case No. 1:19-cv-2293
Gwin, J.

The Court agrees with Cuyahoga County for two reasons.

First, tax valuation and sale appraisal are performed for different purposes and calculated in different ways. Tax valuations, by necessity, are performed with limited information using mass statistical appraisal methodology.[38] Sale appraisals, on the other hand, conduct more in-depth review of an individual property's physical characteristics.[39] Tax valuations therefore give a courser ballpark value adequate for property tax purposes that would likely be inadequate to determine fair market sale value.[40] This is likely one reason that county boards of revision are authorized by statute to conduct individual property investigations in foreclosure proceedings and make findings inconsistent with the county auditor's tax valuation.[41]

Second, even if tax valuations and sale appraisals focused on the same valuation measure, they still measure value at different times. Tax appraisals occur only once every six years, and in Tarrify's case, the property sat abandoned for more than a year after the auditor's 2018 appraisal before it was transferred on July 15, 2019.[42] Value is a fact-intensive inquiry, and a year, especially a year of neglect, can make a difference.[43]

Because tax valuation and individualized appraisal produce different data for different purposes, Plaintiff Tarrify may not present the Cuyahoga County Auditor's property tax valuations to establish fair market land value.

---

[38] Doc. 55-12 at 4.
[39] *Id.*
[40] *Id.*
[41] *Id.*; Ohio Rev. Code § 323.71(B).
[42] Doc. 55-7 at 64.
[43] Doc. 55-12 at 10.

Case No. 1:19-cv-2293
Gwin, J.

For similar reasons, the County cannot be collaterally or judicially estopped from taking differing positions on property value in foreclosure and eminent domain proceedings. Both collateral and judicial estoppel require that a party raise an issue identical to one already decided in a prior related proceeding.[44]

The Ohio Supreme Court has established a four factor issue-identity test: "(1) the existence of substantial overlap between evidence and argument; (2) whether the new evidence or argument involves application of the same rules of law; (3) whether pretrial preparation and discovery reasonably could have been expected to cover the new matters in the prior action; and (4) the closeness of the relationship between the claims involved in the two proceedings."[45]

None of these factors are satisfied here. As just discussed, property tax valuation and fair market sale value are calculated using different methodologies and evidence. Similarly, property tax and eminent domain proceedings employ different rules of law in different judicial settings with different controlling evidence. The Cuyahoga County Board of Revision proceeding in this case is insufficient to satisfy the "absolute due process prerequisite" of issue identity before applying collateral or judicial estoppel against Cuyahoga County.[46]

These conclusions similarly defeat Tarrify's class certification motion.

---

[44] *Aircraft Braking Sys. v. UAW Local 856*, 97 F. 3d 155, 161 (6th Cir. 1996) (collateral estoppel); *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (judicial estoppel).
[45] *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 983 (Ohio 1983).
[46] *Id.* at 985; *Ohio Cas. Ins. Co.*, 2009 WL 2356849, at *5 (declining in an insurance case to apply collateral estoppel on the issue of property value based on county's reliance on county auditor's tax valuation in board of revisions proceedings).

Case No. 1:19-cv-2293
Gwin, J.

As established earlier, whether Cuyahoga County violated the Fifth Amendment when transferring a given property depends on whether the property's tax delinquency exceeded its fair market value.  So too does membership in Tarrify's proposed class.

Because Plaintiff Tarrify may not use the county auditor's tax valuations to establish fair market property value, the parties must undertake the fact-intensive adversarial process of establishing each property's fair market value.  And these individualized property-value at the time of transfer questions would be the core of any future litigation proceedings or trial.

The centrality of these fact-intensive inquiries undermines Tarrify's class certification motion on ascertainability, predominance, and superiority grounds.[47]  For the reasons just discussed, the Court would essentially have to factually adjudicate each class plaintiff's claim to ascertain their class membership.  And, at any rate, resolving these necessarily individualized factual questions would represent the lion's share of the litigation, neutralizing any benefit of the class action vehicle.

Because Tarrify cannot meet its burden to affirmatively demonstrate" compliance with Rule 23's ascertainability, predominance, and superiority requirements, class certification is inappropriate in this case.

IV.    CONCLUSION

For these reasons, the Court **DENIES** Tarrify's class certification motion and limine motion and **GRANTS** Cuyahoga County's limine motion.

IT IS SO ORDERED

---

[47] *Sandusky Wellness Ctr.*, 863 F.3d at 466 (recognizing fact-based determinations necessary to determine class membership "preclude certification, regardless of whether this concern is properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority").

Case No. 1:19-cv-2293
Gwin, J.

Dated:  December 21, 2020

_s/       James S. Gwin_____
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE