UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
TARRIFY PROPERTIES, LLC, *et al.*,  :
: Case No. 1:19-cv-2293
    Plaintiffs,  :
:
vs.  : OPINION & ORDER
: [Resolving Docs. 55 & 76]
CUYAHOGA COUNTY,  :
:
    Defendant.  :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this order, the Court considers Defendant Cuyahoga County's motion for summary judgment on Plaintiff Tarrify Properties, LLC's Fifth Amendment Takings claim. For the reasons stated below, the Court **DENIES** Cuyahoga County's summary judgment motion.

I.     BACKGROUND

The Court has repeatedly recounted the facts of this case in previous orders[1] and offers only a brief factual description here.

On October 31, 2019, Plaintiff Tarrify sued Defendant Cuyahoga County. With its lawsuit, Plaintiff Tarrify claimed that Cuyahoga County violated the Fifth Amendment's Takings Clause by seizing Tarrify's Cleveland property without compensating Tarrify for any value above Tarrify's $35,000 property tax debt.[2]

Roughly a year before the seizure, in January 2018, the Cuyahoga County Auditor had valued the property at $164,700 for property tax purposes.[3] Plaintiff Tarrify says he

---

[1] Doc. 51; Doc.77.
[2] Doc. 1.
[3] Doc. 55-7 at 20.

Case No. 1:19-cv-2293
Gwin, J.

should receive the difference between the $164,700 value and the $35,000 property tax debt.

At a December 11, 2019 case management conference, the Court set a January 27, 2020 expert identification deadline for Tarrify.[4] Tarrify did not identify any experts.

On December 18, 2019, Defendant Cuyahoga County moved to dismiss Plaintiff's complaint, arguing, among other things, that the claim was barred by the Tax Injunction Act and res judicata.[5] The Court denied Defendant's motion as to Plaintiff's claim.[6]

On July 8, 2020, Plaintiff moved to certify a class of Cuyahoga County residents whose property the County has seized to satisfy County property tax debts where those tax debts were less than the seized property's value.[7]

To show that class membership was reasonably ascertainable, Plaintiff proposed to use the Cuyahoga County Auditor's valuation of the potential class members' property to establish that the value of their properties exceeded their tax debts, supporting a plausible Takings claim.[8] Cuyahoga County opposed, arguing that property tax valuations were inadmissible to demonstrate fair market property value outside tax proceedings.[9]

On July 23, 2020, Defendant moved for summary judgment on Plaintiff's Takings claim, restating its argument that the Cuyahoga County Auditor's property tax valuations were not competent evidence to show fair market property value.[10] The County argued that

---

[4] Doc. 27.
[5] Doc. 29.
[6] Doc. 51.
[7] Doc. 50 at 1.
[8] *Id.*
[9] Doc. 52 at 9.
[10] Doc. 55 at 9.

-2-

Case No. 1:19-cv-2293
Gwin, J.

because Tarrify had relied solely on those tax valuations to support its Takings claim, it had not presented sufficient evidence to demonstrate a genuine issue of material fact on the property's fair market value.[11] The County also submitted the expert report of Eric Dettelbach, who appraised Tarrify's seized property at $19,000,[12] considerably less than the $164,700 valuation that the County used for property tax purposes and less than the County's $35,000 tax lien.

Further, in its summary judgment motion, the County reasserted its already rejected Tax Injunction Act and res judicata arguments.[13] The County also argued that Plaintiff Tarrify could not show that Cuyahoga County's routine land seizures were a County custom or practice to establish liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[14] Finally, the County argued that Tarrify could not bring its Takings claim because its interest in the seized property was extinguished when the land was seized.[15]

On September 14, 2020, Tarrify submitted its summary judgment opposition.[16] Tarrify again argued that the County Auditor's valuations were admissible. But Tarrify also for the first time submitted the expert report of Mark Linné, who appraised Tarrify's seized property at $100,000.[17] Relying on Linné's appraisal, Tarrify alternatively argued that the dueling expert appraisal reports presented a triable material fact issue.[18]

---

[11] *Id.*
[12] Doc. 55-7 at 1.
[13] Doc. 55 at 20, 31.
[14] *Id.* at 29.
[15] *Id.* at 26.
[16] Doc. 61.
[17] Doc. 61-2 at 3.
[18] Doc. 61 at 22.

-3-

Case No. 1:19-cv-2293
Gwin, J.

On September 25, 2020, the County replied, arguing that Linné's report should be stricken as untimely.[19]

On December 21, 2020, this Court denied Plaintiffs' class certification motion, finding, as many Courts have, that tax valuations are inadmissible to show fair market property value for non-tax purposes.[20]

The Court now turns to Defendant Cuyahoga County's summary judgment motion. The Court also considers the parties' joint motion to stay case management deadlines.[21]

## II.  LEGAL STANDARD

The Court grants summary judgment if the movant demonstrates that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law.[22] A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party.[23] The Court views the evidence, and draws all reasonable inferences, in the light most favorable to the non-moving party.[24]

## III.  DISCUSSION

Defendant Cuyahoga County raises several threshold issues, including the applicability of the Tax Injunction Act and res judicata, Plaintiff Tarrify's lack of property interest in the surplus value of its seized property, and insufficient evidence to demonstrate the County's *Monell* liability. Defendant also alternatively argues that Tarrify should not be allowed to rely on Linné's expert appraisal report because it was filed in response to

---

[19] Doc. 67 at 20.
[20] Doc. 77.
[21] Doc. 76.
[22] Fed. R. Civ. P. 56(a).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[24] *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018).

-4-

Case No. 1:19-cv-2293
Gwin, J.

Defendant's summary judgment motion months after the expert identification deadline. The Court takes each of these arguments in turn.

### A. Tax Injunction Act

First, the County argues that the Tax Injunction Act deprives this Court of subject matter jurisdiction. The Tax Injunction Act provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[25] The County argues that Tarrify's Takings claim violates the Tax Injunction Act by challenging the County's ability to collect tax revenues consistent with Ohio law.

But the County's reading of the Tax Injunction Act is far too broad, and the Sixth Circuit recently rejected a very similar argument in *Freed v. Thomas*.[26] The plaintiff landowner in *Freed*, like Plaintiff here, sued to recover the excess value of property seized to satisfy county property taxes.[27] The defendant county argued that the suit was barred by the Tax Injunction Act.[28]

The Sixth Circuit ruled for the plaintiff landowner, finding that while the county had a right shielded from federal review to collect the taxes due on the plaintiff's land, the excess property value that it retained after seizure was not legitimate tax revenue and thus was not protected by the Tax Injunction Act.[29] The court accordingly allowed plaintiff's excess value

---

[25] 28 U.S.C. § 1341.
[26] *Freed v. Thomas*, 976 F.3d 729, 735 (6th Cir. 2020).
[27] *Id.*
[28] *Id.*
[29] *Id.*

-5-

Case No. 1:19-cv-2293
Gwin, J.

Takings claim to proceed.[30] For the same reason, the Tax Injunction Act does not deprive this Court of subject matter jurisdiction over Tarrify's claim.

### B. Res Judicata

Next, Cuyahoga County argues that res judicata bars Tarrify's claim. The Court again declines to apply res judicata against Tarrify on manifest injustice grounds for the reasons stated in its July 17, 2020 order denying the County's motion to dismiss Tarrify's Takings claim.[31]

### C. Tarrify's Ownership Interest in the Seized Property

Third, the County argues that Tarrify's ownership interest in its property was extinguished under Ohio law when the County seized its land, meaning that Tarrify has no right to pursue a Takings claim against the County.

But allowing state law to extinguish Tarrify's claim in this way would read the Takings Clause out of the Constitution. The government seizing a plaintiff's ownership and possessory interest in land and refusing to return any surplus land value is perhaps the most vivid example of a Taking without just compensation. And, in fact, the Supreme Court has held that: "To withhold the surplus [value] from [a land] owner would be to violate the Fifth Amendment to the Constitution . . . [by] tak[ing] his property for public use without just compensation."[32] Tarrify retains a constitutionally protected property interest in any surplus seized property value.[33]

### D. Cuyahoga County's Potential Monell Liability

---

[30] *Id.* at 737.
[31] Doc. 51 at 8–9.
[32] *United States v. Lawton*, 110 U.S. 146, 150 (1884).
[33] *See Freed*, 976 F.3d at 736.

-6-

Case No. 1:19-cv-2293
Gwin, J.

The County also argues that its practice of seizing land without paying any surplus value to the owner is expressly authorized and directed by Ohio law, meaning that the County is not subject to *Monell* liability for maintaining an unconstitutional policy or custom. This argument fails for at least two reasons.

First, the County's relied-upon Ohio Revised Code sections contain permissive rather than mandatory language. Ohio Revised Code § 323.78 provides that "a county treasurer *may* elect to invoke the alternative redemption period in any petition for foreclosure of abandoned lands" before transferring the seized land to a "municipal corporation, township, county, school district, community development corporation, or county land reutilization corporation."

Notably, Ohio Revised Code § 323.71 always provides a county with the option to conduct a traditional foreclosure auction and return excess proceeds to the landowner under Ohio Revised Code § 323.73. Here, Ohio law provides Ohio counties several different avenues to collect on tax debts.

Second, even if the County were forced to use section 323.78 to seize land without sale, Ohio law does not compel the County to refuse to reimburse the landowner for any excess property value. Cuyahoga County therefore chose not to compensate Tarrify for its surplus land value. Cuyahoga County's repeated "deliberate choice from among various alternatives" in favor of the more constitutionally suspect alternative route of land seizure without compensation subjects the County to *Monell* liability.[34]

E. *Linné's Expert Report*

---

[34] *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

Case No. 1:19-cv-2293
Gwin, J.

Finally, the County argues that Plaintiff Tarrify should not be allowed to rely on the Linné expert appraisal report to establish the seized property's fair market value because Tarrify presented the report after the expert identification deadline and in response to the County's motion for summary judgment. Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."

The Sixth Circuit considers five factors to determine whether a party's failure to timely identify a witness is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."[35]

The first four factors support finding Tarrify's error harmless or substantially justified. Surprise is unlikely here. The County should have anticipated that Tarrify would present a traditional appraisal report to establish the value of its property given that the County argued that Tarrify should not be allowed to rely on the County Auditor's property tax valuation. Further, any potential surprise has largely been cured. The County has already deposed Linné[36] and filed an expert report rebutting Linné's conclusions.[37]

---

[35] *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015).
[36] Doc. 74-2.
[37] Doc. 75-1; Doc. 75-2.

-8-

Case No. 1:19-cv-2293
Gwin, J.

For the same reason, allowing Tarrify to rely on Linné's report will not delay the trial. Though trial is currently set to begin on or around February 16, 2021, the trial will necessarily be delayed until at least April 5, 2021 under the Court's January 13, 2021 General Order 2020-08-05 addressing the COVID-19 pandemic, which vacated all civil or criminal jury trial dates on or before April 4, 2021.

Linné's expert report is also vital to Tarrify's claim, especially in light of the Court's December 21, 2020 order finding that the County Auditor's property tax valuation was not admissible to establish Tarrify's fair market property value.[38] Without Linné's report, Tarrify will be left without fair market value evidence.

The final factor, Tarrify's reason for delaying the expert report, is neutral. Plaintiff Tarrify bears the burden of establishing the seized property value,[39] and Tarrify could have anticipated that the County Auditor's valuations were inadmissible, given the multitude of court decisions reaching that conclusion.[40]

On the other hand, it was clear from Tarrify's complaint and amended complaint that it intended to rely on the auditor's property tax valuation to establish its property's fair market value.[41] Yet, the County did not argue that the tax valuation was inadmissible for that purpose until its July 22 and 23, 2020 class certification and summary judgment filings six months after the expert identification deadline.[42] Tarrify then responded at the earliest

---

[38] Doc. 77.
[39] *Nat'l Food & Beverage Co. v. United States*, 105 Fed. Cl. 679, 691 (2012).
[40] *Valuation for taxation purposes as admissible to show value for other purposes*, 39 A.L.R.2d 209 §2 (surveying nationwide precedent on the question and describing the proposition that "assessed valuation is not admissible as evidence of valuation for purposes other than taxation" as "overwhelmingly established").
[41] Doc. 1 at 6; Doc. 20 at 7.
[42] Doc. 52 at 15–16; Doc. 55 at 9.

-9-

Case No. 1:19-cv-2293
Gwin, J.

opportunity with additional evidence of fair market value in Linné's expert appraisal report.[43]

If the County's property tax valuation were admissible, Linné's report would be unnecessary. The County's delay in presenting its inadmissibility argument is therefore partially to blame for Linné's delayed report.

Based on the five *Howe* factors, the Court finds that Tarrify's expert appraisal report delay was substantially justified or harmless. Accordingly, Tarrify may rely on Linné's report for summary judgment and trial purposes.

### F. *A Genuine Issue of Material Fact for Trial Remains.*

The County's appraisal expert concluded that Tarrify's property was worth only $19,000 when seized. If the jury agrees, Tarrify would not be entitled to recover anything, as its $35,000 tax debt exceeded the property's value. But Tarrify's expert concluded that the property was worth $100,000 when seized. If the jury agrees, Tarrify would be entitled to the surplus value.

The parties naturally take issue with their respective expert reports, but neither expert report has been challenged as inadmissible for unreliability. Viewing the evidence and drawing all reasonable inferences in the light most favorable to Tarrify, the non-moving party,[44] the Court finds that a reasonable jury could return a verdict for Tarrify. Accordingly, summary judgment is inappropriate.[45]

### IV. CONCLUSION

---

[43] Doc. 61-2; Doc. 61-3.
[44] *Rhinehart*, 894 F.3d at 735.
[45] *Anderson*, 477 U.S. at 248.

-10-

Case No. 1:19-cv-2293
Gwin, J.

For the reasons stated, the Court **DENIES** Cuyahoga County's summary judgment motion. The Court recognizes that the nature of the case has changed following its class certification and summary judgment rulings and is aware that Plaintiff has requested leave to appeal the Court's class certification decision.

Accordingly, the Court grants the parties' joint motion to stay pending litigation deadlines, including the trial date, and stays this case until the Sixth Circuit decides whether to accept Tarrify's appeal. If the Sixth Circuit accepts the appeal, the case is stayed until the appeal is resolved. If the Sixth Circuit declines Tarrify's appeal, the Court will set a status conference to revisit the case schedule.

IT IS SO ORDERED

Dated: January 19, 2021                *s/    James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE